Shelby Owens and Dorothy H. Owens, Husband and Wife v. Commissioner.
Owens v. Commissioner
Docket No. 58812.
United States Tax Court
T.C. Memo 1958-103; 1958 Tax Ct. Memo LEXIS 129; 17 T.C.M. (CCH) 519; T.C.M. (RIA) 58103; May 29, 1958
Robert J. Hobby, Esq., and Wentworth P. Durant, Esq., 1520 Republic Bank Building, Dallas, Tex., for the petitioners. Carswell H. Cobb, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1953 in the amount of $4,684.88. Petitioners dispute only the disallowance of the deduction of $7,500 in attorney's fees. The sole issue for determination is whether the sum of $7,500, which was paid to an attorney in 1953, is an expense incurred for the production of income or for the management, conservation, or maintenance of property held for the production of income. Findings of Fact Some of the facts have been stipulated and *130 are hereby found as stipulated. Petitioners are husband and wife and are residents of Arlington, Texas. They filed a joint return for the calendar year 1953 with the district director of internal revenue at Dallas, Texas, on September 15, 1954. From 1922 to December 10, 1948, petitioner Shelby Owens (hereinafter called petitioner) was married to Margaret Stuckert Owens (hereinafter called Margaret). In 1946 they became estranged, and they separated during the year. At that time petitioner had various business interests but his chief business and source of income was a lumber business known as Stuckert-Owens Lumber Company, which was carried on as a partnership between petitioner and J. Lamar Stuckert, a nephew of Margaret. Each partner owned a 50 per cent interest in the business. During all of their married life, petitioner and Margaret were residents of Texas, a community property state, and all of the property and business interests which were owned by them at the time of the separation were owned in community. Due to the circumstances leading up to their separation, Margaret became very embittered and generally let it be known that she was going to get everything she could *131 from petitioner by virtue of the divorce proceedings. To this end she contacted J. Lamar Stuckert, her nephew and petitioner's partner, and attempted to negotiate a new partnership arrangement of the lumber business with him, contingent upon her being able to wrest this from petitioner in the divorce proceeding. J. Lamar Stuckert declined any such arrangement for reasons of his own and so advised petitioner. He told petitioner that he would dissolve their partnership, regardless of cost, if Margaret were to obtain any active interest in the business. J. E. Foster, with whom petitioner was similarly associated in another business, became alarmed at these events, forced a dissolution of their partnership, and bought out petitioner's interest. This left petitioner dependent on the Stuckert-Owens Lumber Company as his primary source of income. During 1946, Margaret retained Hal Lattimore, a Fort Worth attorney who was a lifelong friend of both parties, as her counsel and paid him $2,500 in cash in advance for representing her in the divorce proceedings. Petitioner was represented by his brother Richard, also a Fort Worth attorney, who customarily handled his legal affairs. Petitioner *132 did not plan to, and made no effort to, contest the divorce proceedings, but was anxious only to save his interest in Stuckert-Owens Lumber Company as his source of income. Richard told him that he did not believe he could handle any of the property settlement negotiations because of the family relationship and his personal acquaintance with Margaret. Richard, who had his place of business in the same building with Lattimore, Margaret's attorney, met with Lattimore often but did not discuss the property settlement with him. Margaret informed Lattimore of her desire to obtain petitioner's interest in the lumber company, $100,000 in cash, the home, and automobiles as her settlement. Petitioner consulted Lattimore, who was familiar with his business affairs, and told him that it was essential that he retain his full interest in the lumber business, if possible. He told Lattimore that he would pay the $100,000, his home and the property out at the lake, and the other things mentioned in the property settlement if he could keep the lumber business. He promised to pay Lattimore $7,500 and not to contest the divorce if Lattimore could get Margaret to agree to let him keep the lumber business. *133 Lattimore agreed that it would be for the best interest of petitioner to keep the lumber business and, as Margaret's attorney, would recommend that she accept petitioner's offer. Lattimore informed Margaret of the conversation he had with petitioner and advised her to accept petitioner's offer. The property settlement was arranged whereby petitioner would retain his interest in the lumber company, as he had desired. Richard Owens reviewed the final settlement for petitioner and recommended that he accept it because it was in his best interests. On September 28, 1948, Shelby Owens executed the property settlement. Richard Owens delivered the settlement to Margaret's attorney, who then secured Margaret's acceptance of it as so constituted. It was agreed that the $7,500 which petitioner was to pay Lattimore for his efforts in securing the property settlement as petitioner desired would be incorporated in the divorce decree as the attorney's fees. The property settlement and the attorney's fees were incorporated in the divorce decree entered December 10, 1948. After the divorce decree and property settlement, Lattimore prepared a note for $7,500 as payment from petitioner, which *134 petitioner signed and returned to him. Petitioner did not pay Richard Owens any monies for his efforts on behalf of petitioner in the divorce proceedings or property settlement. He did, however, do some work for Richard. In 1953, a tax deficiency was assessed against Lattimore. This deficiency was satisfied by payment of the $7,500 note which was applied to the tax deficiency. Petitioner deducted the $7,500 attorney's fees in his 1953 tax return. Respondent disallowed this deduction. Opinion Petitioner contends that the $7,500 paid to Lattimore was deductible under section 23(a)(2) of the 1939 Code as an expense paid for the management, conservation, or maintenance of property held for the production of income. [1] Petitioner argues that the fee paid to Lattimore was to save his interest in the Stuckert-Owens Lumber Company which was his sole source of income. He asserts that the money was paid to Lattimore for his efforts on behalf of petitioner and not as Margaret's attorney. He further points out that the divorce was not contested and that his only efforts were to save his sole source of income. *135 In , revd. (C.A. 6, 1957), this Court held, under facts similar to those before us here, that fees paid to an attorney for his efforts in securing a favorable property settlement incidental to a divorce were not deductible. Further citing , affd. (C.A. 9, 1953); , and , revd. (C.A. 8, 1952). Recently, in , affd. (C.A. 2, April 7, 1958), the Court adhered to this position, and we find nothing in the instant case which would lead us to a different conclusion. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - * * *
(2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩